## GRIFFIN et al. v. CITY OF WAXA-HACHIE et al.   (No. 8921.)*

(Court of Civil Appeals of Texas. Dallas.
Dec. 22, 1923.   Rehearing Denied
Jan. 19, 1924.)

**1. Municipal corporations ⬉406(2)—City held to have power to levy assessment for street improvements.**

Where the city of Waxahachie in 1910 adopted the general paving law (Rev. St. arts. 1006–1017), and in 1916 under the Home Rule Amendment (Const. art. 11, § 5) adopted the "Enabling Act" applicable of cities of over 5,000 inhabitants, its new charter providing that the city should retain all powers theretofore possessed by it, such city had the power to levy special assessments according to the terms of Rev. St. arts. 1006–1017, though the Enabling Act does not provide a specific method of procedure to ascertain and fix special assessments against owners for benefits in enhanced value from paving.

**2. Statutes ⬉190—Construction not required where provisions clear.**

Where the provisions of a law and a charter are clear, construction is not required.

**3. Municipal corporations ⬉455—Failure to give personal notice held not to invalidate assessment for improvements.**

Failure to give the owners of abutting property personal notice *held* not to invalidate proceedings by a city to fix the cost of improvements according to the enhancement in value of the property, where such owners actually appeared and were given a hearing and no disadvantage or loss resulted from the failure to give such notice, especially where an ordinance provided that any error as to the name of an owner should not have an invalidating effect.

Error from District Court, Ellis County; W. L. Harding, Judge.

Action by George L. Griffin and others against the City of Waxahachie and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

I. M. Williams, of Dallas, and C. M. Supple, of Waxahachie, for plaintiffs in error.

G. C. Groce, of Waxahachie, and Dabney, Goggans & Ritchie, of Dallas, for defendants in error.

HAMILTON, J. This suit involves the validity of a special assessment against property for the construction of payment on a street contiguous to it in the city of Waxahachie, and also the right to foreclose a lien against the property and to recover personal judgment against its owners.

Prior to 1916 Waxahachie was a city incorporated under the general statutes governing the incorporation of municipal governments. In 1910, at an election for that purpose, it adopted the provisions of the general paving law embodied in chapter 11 of title 22, Revised Civil Statutes. In 1916 an election was held in that city pursuant to the provisions of section 5 of article 11 of the Constitution (the Home Rule Amendment adopted in 1912) and under chapter 17 of title 22, Revised Civil Statutes, known as the "Enabling Act," the purpose of which election was to determine whether or not a charter should be adopted in conformity with these constitutional and statutory provisions. The election resulted in the adoption of the charter. The preamble of that charter is as follows:

"The people of the city of Waxahachie, in Ellis county, Texas, a city of more than five thousand inhabitants, incorporated under the General Municipal Incorporation Laws of this state under powers conferred by the Constitution and laws of Texas, in order to more fully obtain the benefits of local self-government, encourage better methods in the transaction of municipal business, enlarge the powers of municipal government and otherwise promote the common welfare, do adopt the following charter, in extension, amendment and in lieu of the heretofore existing charter of said city, to wit."

Among the provisions of the charter are these which are pertinent to an understanding of the views to be stated in support of our conclusion:

"Said city as hereby constituted, * * * except as limited or restricted by other provisions hereof shall retain and may exercise all powers heretofore possessed under its incorporation under the General Municipal Incorporation Laws of this state, * * * and no enumeration of special powers elsewhere in this charter shall be held or construed to preclude the city from exercising all powers of local self-government not inhibited by the Constitution and general laws of this state or by special limitations in this charter contained. * * *

"The assessor and collector * * * shall collect all taxes due the city, whether the same be general, special assessment, occupation, license or otherwise. * * *

"In addition to taxing powers in this charter otherwise permitted, the city council may annually levy and cause to be assessed and collected taxes upon the taxable property within the city to raise funds for the following purposes and not to exceed the following rates, to wit: To pay current expenses of the city 30 cents upon the $100.00 valuation of such property; for the construction and improvement of roads, streets and bridges within the city, 15 cents upon the $100.00 valuation of such property. * * * The city shall further have power to levy and cause to be assessed and collected such other taxes of every kind and description and to tax such other objects and subjects of taxation and to charge and collect such license fees or other fees as may be permitted or allowed by the Constitution or any law of this state, including the General Municipal Incorporation Laws, the benefits of which in this regard are specially retained. * * *

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 12, 1924.

"The powers of the city under its incorporation under the General Municipal Incorporation Laws of the state being retained, except as changed or limited by this charter. * * * "

There is embodied in the charter an express retention of all powers (and the right to exercise them) possessed by virtue of the prior incorporation under the general law. All the powers and privileges, and the right to exercise them, conferred by chapter 17, title 22, of Revised Civil Statutes, upon cities with more than 5,000 inhabitants adopting those provisions, are declared to be specifically conferred upon the city. In clarification of the extent to which the city is to be clothed with these powers, this language is used:

"* * * The intent hereof being to confer on said city the full power of local self-government, except as restrained by the Constitution and laws of this state and special provisions hereof, and no enumeration of special powers elsewhere in this charter shall be held or construed to preclude the city from exercising all powers of local self-government not inhibited by the Constitution and general laws of this state, or by special limitations in this charter contained."

On January 6, 1920, a resolution ordering the pavement of certain streets, including Williams street, on which the property involved abuts, was finally adopted. Competitive bids for the paving were received, and the contract was let to Texas Bitulithic Company. Following other preliminary steps, newspaper notice was given all owners of property on the street to appear at the city hall upon a designated date for the purpose of objecting to the respective assessments levied against their property. An ordinance levying the respective assessments against property abutting upon the street was passed. The property involved in this suit was properly described. The ordinance met the requirement of declaring the amount assessed against the property to be equaled by its enhanced value to result from the improvement. The assessment was made against the estate of E. H. and Emma Griffin, the deceased parents of plaintiffs in error. This ordinance was passed on May 3, 1921. The amount assessed against this property was fixed at $1,093.45.

E. H. Griffin had died in 1913 and Mrs. Emma Griffin died in September, 1920. There was never any administration upon the estate of either E. H. Griffin or Mrs. Emma Griffin, and it appears that there was never any necessity for an administration. It appears that after the death of these two parties the plaintiffs in error inherited the property, and became the exclusive owners of it; they responded to the notice given by the city of Waxahachie to property owners in the preliminary processes which preceded the fixing of the assessment and the lien to secure it, and appeared at the time and place designated, where they made their formal protest and objections. So far as the record discloses, they were given every opportunity to present their objections exhaustively, and, after they were heard and considered, they were overruled.

The foregoing proceedings all having been carried out, the paving having been completed and accepted, assignable certificates evidencing the indebtedness and lien against the property having been prepared for issuance to Texas Bitulithic Company, plaintiffs in error instituted this suit within 20 days after the passage of the ordinance seeking to have the assessment of the indebtedness against them personally, and against their property, to be declared null and void; and seeking an injunction to restrain proceedings under the assessment, and also seeking to obtain a decree to the effect that the city of Waxahachie and its governing body, under the terms of its charter, were without power to levy such an assessment against plaintiffs in error or their property; and, in the alternative event that it should be determined that the city of Waxahachie possessed the power to levy the assessment against the property and plaintiffs in error, then that the assessment be declared unenforceable because of its being in excess of the benefits in enhancement of value of the property by reason of the improvements. There was a prayer that the court ascertain and declare the amount of actual benefit accrued in the way of enhanced value of the property by reason of the improvements; and plaintiffs in error also prayed the court to correct the assessment against the property and against them, so as to fix it in an amount not greater than the actual benefit. By reason of the litigation no certificates were issued.

The case was submitted to a jury upon special issues. The first issue submitted was as to whether or not the improvement made by the Texas Bitulithic Company had the effect of enhancing the value of plaintiff in error's property abutting thereon at the time the improvement was made. This issue was answered in the affirmative. The other issue was as to the extent of such improvement in value at the time it was made. In response to this issue the jury found the amount to be $1,093.45, and judgment was entered accordingly for the defendants in error upon all features of the case, including a decree declaring all the indebtedness due under provisions for accelerating maturity in case of failure to pay any installment when due, and foreclosing the lien.

[1] The various propositions upon which the appeal is predicated can be grouped as resting upon two general underlying propositions. They are these:

First. It is contended, in effect, under the first three of the six propositions that, where a city operates under a charter authorized by section 5 of article 11 of the Constitution, known as the Home Rule Amendment, such

city is wholly without power to assess any part of the costs of street improvements against abutting property or the owners thereof, unless the charter itself apportions the cost of such improvement between the property owners and the city; and that since the charter of the city of Waxahachie does not expressly fix the respective charges by a specific rule of apportionment written in that instrument, no power existed to assess any of the cost of improvement made in this case against plaintiffs in error.

Secondly. The last three of the propositions embody substantially the contention that, even if the city council of Waxahachie ever had any power under the charter to impose the assessments against plaintiffs in error's property, the procedure followed in this case did not create any personal liability or a lien against the property, because the assessments were not made in the names of the actual owner of the property, and the notices required by law to be given were not given to the actual owners of the property.

We are not in accord with the views advanced in the various propositions to sustain either of the two grounds above generally stated as constituting the bases of plaintiffs in error's propositions.

We think it cannot be questioned that Waxahachie had the power, authority, and right already bestowed upon it by reason of its adoption in 1910 of the general paving law contained in chapter 11 of title 22, Revised Civil Statutes, if not otherwise, to make the assessment. The adoption of the charter by Waxahachie in 1916 preserved and brought forward this power, authority, and right into the charter. It was specifically declared, as is to be noted in the instrument adopted, in effect, that those powers, privileges, and rights already existing were to be preserved and continued, except in the instances wherein the charter provisions were contrariwise. All pre-existing authority being preserved in the charter, the adoption bodily of the statutory declaration of municipal powers contained in the "Enabling Act," conferred upon cities accepting those provisions, gave rise within the charter itself to the governmental right of the city to do the things questioned in this case. Accordingly, we are of the opinion that the city, not only preserved to itself in adopting the charter the specific authority it already possessed to contract for the paving and charge the cost against abutting property and its owners, and also levy liens upon the property in proportion to benefits in the manner pursued, but that the adoption of the statutory provisons of the "Enabling Act," by referring to them and declaring them to be accepted as the basis of municipal authority of itself, clothed the city with adequate power to effect the public improvements which plaintiff in error denies was within the scope of its authority. It is true that the "Enabling

Act" itself does not provide a specific method of procedure to ascertain and fix special assessments against owners of property for benefits in enhanced value for paving. The fact remains, however, that the power was specially conferred upon the city of Waxahachie by the terms of this law in the adoption of the charter as well as by chapter 11 of title 22, and it was exercised by the means and agencies which it already possessed the authority to act through by reason of its previous adoption of the paving law as above stated, which was preserved and carried into the existing charter.

[2] To read the charter provisions in connection with the right and authority already acquired under chapter 11 of title 22, Revised Civil Statutes, and also in connection with the "Enabling Act," enacted in conformity with the Home Rule Amendment (section 5, article 11, Constitution), suffices to sustain this view. No necessity for amplifying or discussion is required. The opinion here expressed rests entirely within the confines of these various related enactments, and nothing could be said beyond them or concerning them to fortify the conclusion. Our opinion is merely an application of these acts of the Legislature and of the charter of Waxahachie to the steps complained against. The provisions of law and of the charter are clear. They speak for themselves. In this instance, under the facts, construction is not required. Since the charter embraces the general paving law previously adopted in conformity with the provisions of which the amount charged against plaintiffs in error's property was fixed, and also since the very terms of the "Enabling Act" itself empower the city to ascertain and fix as a charge against such property the enhancement in value accruing from the improvements, we think it clear that the city of Waxahachie did possess the power to charge against plaintiffs in error the cost of the improvements measured in terms of the enhancement in value, which was ascertained and fixed by the city council in good faith.

[3] Conceding that there were irregularities in the method pursued, and that notices in fact were not given plaintiffs in error as the owners of the property, yet plaintiffs in error in due time acquired all the knowledge of the proposed action of the city which they could have derived from the notices themselves, and, acting upon such information, appeared before the city council in response to the notice of the date set for hearing, and presented every objection and complaint which would have been available to them had defendants in error given each of them notice personally as the respective owners of the property. Thus it is apparent that no disadvantage or loss resulted from the failure to give personal notice to each of the complaining parties. The notice in fact did identify the property as the estate of E. H.

and Emma Griffin. The property might not improperly be denominated an estate inherited by the complaining parties. That provision of the ordinance to the effect that any error as to the name of an owner shall have no invalidating effect, we think, is to be considered as potently persuasive in denying the assertion that the proceedings were invalid per se, in the absence of a showing of loss of harm, merely because the real owners of the property were not named in the proceedings and that the real owners were not given personal notice. The situation might be different had the plaintiffs in error remained unadvised of the proceedings, and a wrongful assessment had been made without an opportunity being afforded them to be heard and seek redress. However, under the circumstances of this case they not only had the same knowledge imparted to them which personal notice to each of them would have carried, but they also were accorded a hearing before the city council, in all respects the equivalent of what it would have been had they received the personal notice, and they promptly resorted to the trial court for relief against the wrong they conceived to have been inflicted.

They themselves called upon the court in their pleadings to review the proceedings of the council and redress the injuries they alleged they had suffered. A full hearing resulted adversely to them, and it occurs to us that in every step of the proceedings they were afforded their day in court, and ought to be required, under the facts, to abide the result. Under the findings of the city council and by the verdict of the jury, the enhancement in value equaled the charge. A direct benefit was returned for the assessment. The interest of the public was intermixed with the transactions. Under such circumstances as the foregoing we believe that substantial harm as well as a formal right ought to exist to challenge the action of the court, and, as nothing of the kind seems to have been revealed, the judgment should not be disturbed.

The judgment of the court below is affirmed.